UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

SANTA FE ALLIANCE FOR PUBLIC HEALTH
AND SAFETY, ARTHUR FIRSTENBERG, and
MONIKA STEINHOFF,

    Plaintiffs,

v.                                                                         No. 18 CV 32 JAP-SCY

CITY OF SANTA FE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiffs Santa Fe Alliance for Public Health and Safety (the Alliance), Monika Steinhoff (Ms. Steinhoff), and Arthur Firstenberg (Mr. Firstenberg) (collectively, Plaintiffs) allege that Defendant City of Santa Fe (Defendant or the City) violated Plaintiffs' rights when it amended the Santa Fe City Code ordinances regarding telecommunications facilities, and they request declaratory and injunctive relief from the amended ordinances.[1] Plaintiffs ask the Court to grant a preliminary injunction while their Complaint is pending, which Defendant opposes.[2] Additionally, Plaintiffs request an expedited hearing or decision on their Motion.[3] The Court will deny the requested preliminary injunction because Plaintiffs have not demonstrated that irreparable harm is likely to occur before the Court can hear the merits of their claim.

---

[1] *See* FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE AND OTHER RELIEF (Doc. No. 18) (Complaint).
[2] *See* MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 20) (Motion); DEFENDANT CITY OF SANTA FE'S RESPONSE TO PLAINTIFFS' RULE 65 MOTION (Doc. 20) (Doc. No. 23) (Response); PLAINTIFFS' REPLY ON MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 29) (Reply).
[3] *See* UNOPPOSED MOTION FOR EXPEDITED HEARING AND DECISION ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 33).

## I. BACKGROUND[4]

Chapter 27 of the Santa Fe City Code regulates telecommunications facilities that are located in public rights-of-way. As enacted in 1998, Chapter 27 required a site-specific lease for every facility placed in a public right-of-way and charged a fee for the lease. However, the United States District Court for the District of New Mexico struck down this ordinance after Qwest Corporation challenged the fee structure. *See Qwest Corp. v. City of Santa Fe*, 224 F. Supp. 2d 1305 (D.N.M. 2002), *aff'd*, 380 F.3d 1258 (10th Cir. 2004). For the next few years, Defendant did not adopt a new ordinance and did not process any applications for telecommunications facilities in the public rights-of-way.

Then, in 2010, Defendant revised Chapter 27 by enacting Ordinance 2010-14 to eliminate site-specific leases and fees in favor of a franchise system. This allowed a telecommunications company to submit an application for a franchise, with a map of proposed routes and antenna locations, rather than for a single location. The routes could be approved after a public hearing, and the company would not need to provide notice or seek further approval for the specific antenna locations along an approved route, but it would be required to pay a franchise fee. The fee charged was 3 percent of the annual gross revenue that the provider derived from facilities located in public rights-of-way. Qwest again challenged the fee structure, and the United States District Court for the District of New Mexico struck it down. *See Qwest Corp. v. City of Santa Fe*, 2013 WL 12241199 (D.N.M. 2013). The City then appealed to the Tenth Circuit, and on July 1, 2015, Qwest and the City signed a settlement agreement and stipulated to the dismissal of the appeal. The settlement agreement reduced the franchise fee to 2 percent of only the revenue that Qwest derived from its retail services.

---

[4] The facts are undisputed unless otherwise noted.

2

On November 9, 2016, after a public hearing, the City adopted Ordinance 2016-42 to amend Chapter 27 in accordance with the settlement that had been approved by the Tenth Circuit Court of Appeals. The new ordinance imposed a franchise fee of 2 percent of gross revenue from telecommunications retail services. On December 8, 2016, Plaintiffs Mr. Firstenberg and the Alliance filed suit in the State of New Mexico First Judicial District Court seeking a declaration that Ordinance 2016-42 was void and unenforceable. *See Santa Fe Alliance v. City of Santa Fe*, Case No. D-101-CV-2016-02801. However, because no franchises had yet been awarded, the state court dismissed the complaint on June 6, 2017 as not ripe for review. On July 25, 2017, it denied Plaintiffs' motion to reconsider that dismissal.

Meanwhile, on March 20, 2017, telecommunications company CNSP, Inc. d/b/a NMSURF also challenged Chapter 27, arguing that certain provisions were invalid, unconstitutional, and preempted by the Telecommunications Act, 47 U.S.C. § 253. *See CNSP v. City of Santa Fe*, No. 17-cv-00355-KG-SCY (D.N.M.). This suit was recently dismissed by United States District Judge Kenneth Gonzales. *See id.*, Final Order of Dismissal (Doc. No. 55, entered March 14, 2018). But on August 30, 2017 while the suit was still pending, the City adopted Ordinance 2017-18 in response to the litigation. Ordinance 2017-18 repealed many of the franchise application requirements in order to streamline the land use review process for telecommunications facilities in the public rights of way.

On November 21, 2017, Santa Fe Mayor Javier Gonzales issued a Proclamation of Emergency due to "insufficient telecommunications capacity in the City, which have caused or are causing danger, or injury or damage to persons and property within the City." Doc. 20-1. Mayor Gonzales authorized the installation of temporary or mobile wireless telecommunications facilities on City property, pending review and approval of fixed wireless facilities, to allow

emergency responders to better communicate with their departments, other agencies, and the public. On December 8, 2017, seven facilities were approved and construction began shortly. Mayor Gonzales issued two substantially identical Proclamations on December 13, 2017, and December 26, 2017.

Plaintiffs allege that in adopting Ordinance 2016-42 and Ordinance 2017-18 and issuing the Proclamations of Emergency, the City violated Plaintiffs' rights under the United States Constitution, the New Mexico Constitution, and numerous state statutes and ordinances. Plaintiffs ask the Court to preliminarily enjoin Defendant (1) from enforcing Chapter 27 as amended by Ordinance 2016-42 and Ordinance 2017-18; (2) from awarding any franchises under Chapter 27 pending the outcome of this lawsuit; (3) from enforcing the Mayor of Santa Fe's Proclamation of Emergency, including any continued construction of cell towers authorized by the Proclamation; and (4) from allowing the operation of any telecommunications facilities that have already been installed under the Proclamation. The City has not yet awarded any franchises under Chapter 27 as amended by the challenged ordinances, but Plaintiffs ask for an expedited decision as to their requested injunction because Defendant has scheduled five public hearings on May 9, 2018, regarding proposed telecommunications franchises.

**II.     DISCUSSION**

"[F]ederal district courts have jurisdiction over actions seeking to enjoin the enforcement of a state regulation." *Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1264 (10th Cir. 2004) (citing *ANR Pipeline Co. v. Corporation Comm'n of Okla.*, 860 F.2d 1571, 1576 (10th Cir. 1988)). Because Plaintiffs allege that the challenged ordinances interfere with Plaintiffs' federal rights, this Court has jurisdiction under 28 U.S.C. § 1331 to resolve Plaintiffs' claim for an injunction.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (per curiam) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "To obtain a preliminary injunction, the moving party must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1260 (10th Cir. 2001) (internal quotation marks omitted).

Three types of preliminary injunctions are particularly disfavored, such that "a movant must make a heightened showing to demonstrate entitlement to preliminary relief: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 977 (internal quotation marks omitted).

Defendant argues that Plaintiffs must meet this heightened burden because their requested injunction would alter the status quo and would afford all the relief that Plaintiffs could recover after a full trial on the merits. Plaintiffs do not address Defendant's contention that a preliminary injunction would afford Plaintiffs full relief, but the Court finds that a heightened burden is not required on this ground because Plaintiffs have also requested declaratory and

permanent injunctive relief after trial. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1247–48 (10th Cir. 2001). Plaintiffs contend that a preliminary injunction would not alter the status quo because no franchises have been awarded under Chapter 27, and an injunction would preserve that situation. Plaintiffs concede that their fourth request for injunctive relief could alter the status quo by prohibiting the operation of telecommunications facilities already installed under the Proclamations, but they ask to withdraw that request if the Court determines that it would trigger a heightened burden.

"The status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Dominion Video Satellite*, 269 F.3d at 1155 (internal quotation marks omitted). "In determining the status quo for preliminary injunctions, this [C]ourt looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id.* Accordingly, the Court finds that the status quo for the purposes of this case is the process required by Chapter 27 prior to its amendment by Ordinance 2016-42 and Ordinance 2017-18 and prior to the issuance of the Proclamations challenged by Plaintiffs. The requested preliminary injunction will not alter this status quo, so does not require Plaintiffs to meet a heightened burden.

Nevertheless, Defendant asserts that Plaintiffs' Complaint fails to state a claim, and consequently that Plaintiffs cannot meet their burden to prove a likelihood of success on the merits under either standard for preliminary injunctive relief. Defendants further argue that Plaintiffs have not demonstrated that they are likely to suffer irreparable harm in the absence of injunctive relief. "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate

that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Id.* at 1260.

Irreparable harm "must be both certain and great," and not "merely serious or substantial." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250. "Purely speculative harm will not suffice[.]" *RoDa Drilling*, 552 F.3d at 1210. To justify a preliminary injunction, irreparable harm must be likely to occur before a ruling on the merits. *Id.*

Plaintiffs allege two types of irreparable harm: (1) deprivation of due process; and (2) personal injury. Plaintiffs argue that they are in danger of personal injury in the form of physical harm from radiation that will emanate from the telecommunications facilities that will be located in public rights-of-way. Plaintiffs support their argument with affidavits and studies from purported experts as to the dangers of radiofrequency radiation. But Plaintiffs fail to connect these alleged generalized dangers to a specific likelihood of harm to Plaintiffs. Plaintiffs admit that no facilities have yet been approved under challenged ordinances, and although they submit that hearings have been scheduled in May that will likely lead to franchise approvals, they present no evidence that these yet-to-be-approved franchises will result in the construction of telecommunications facilities in any location that is virtually certain to harm Plaintiffs before the merits of this case can be decided. Plaintiffs state that several facilities have been approved under the Proclamations, but those apply only to temporary and mobile facilities and again, Plaintiffs have presented no evidence that these particular facilities are certain to result in great harm. The Court finds that any risk of harm from these unidentified and temporary or not yet existing facilities is speculative.

Plaintiffs assert that they are being deprived of due process because the emergency Proclamations and Chapter 27, as amended, will allow telecommunications facilities to be

constructed in public rights-of-way without prior notice and hearing. Plaintiffs argue that this deprives citizens of their rights in property, health, safe travel, and "potentially their lives." However, any injuries to Plaintiffs that may result from the possible lack of notice and hearing before a facilities siting decision is made are only speculative and generalized at this point. No facilities or locations have yet been identified or approved, and the ordinance exempts only some kinds of facilities from specific types of review. Plaintiffs have not shown that any particular facility that will deprive them of a protected interest is likely to be approved without notice and hearing before the Court can hear the merits of this suit. The Court finds that no unconstitutional deprivation of due process is certain, and accordingly concludes that Plaintiffs have not met their burden to justify preliminary injunctive relief.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 20) is DENIED; and

(2) UNOPPOSED MOTION FOR EXPEDITED HEARING AND DECISION ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 33) is DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE