UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

SANTA FE ALLIANCE FOR PUBLIC HEALTH
AND SAFETY, ARTHUR FIRSTENBERG, and
MONIKA STEINHOFF,

    Plaintiffs,

v.                                                                                    No. 18 CV 32 JAP-SCY

CITY OF SANTA FE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiffs Santa Fe Alliance for Public Health and Safety (the Alliance), Monika Steinhoff (Ms. Steinhoff), and Arthur Firstenberg (Mr. Firstenberg) (collectively, Plaintiffs) allege that the amended approval process for telecommunications facilities adopted by Defendant City of Santa Fe (Defendant or the City) violates Plaintiffs' rights under federal and state law.[1] Defendant contends that Plaintiffs lack standing to challenge the ordinances and proclamations that amended the facility siting process, that Plaintiffs' claims are not ripe for review, and that Plaintiffs' Complaint fails to state a claim and fails to join an indispensable party.[2] The Motion has been fully briefed.[3] The Court will grant the Motion and, concluding that Plaintiffs do not have standing to bring their federal claims, will dismiss Plaintiffs' Complaint without prejudice for lack of jurisdiction.

---

[1] *See* FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE AND OTHER RELIEF (Doc. No. 18) (Complaint).
[2] *See* DEFENDANT CITY OF SANTA FE'S AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. No. 22) (Motion).
[3] *See* PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO DISMISS (Doc. No. 24) (Response); DEFENDANT CITY OF SANTA FE'S REPLY SUPPORTING ITS AMENDED MOTION TO DISMISS (Doc. No. 37) (Reply); MOTION TO FILE SURREPLY (Doc. No. 39).

## I. BACKGROUND[4]

Plaintiffs are residents of the City, and an Alliance of those residents, who allege that they have been forced to abandon homes or businesses due to the effects of radio frequency (RF) radiation. They assert that RF radiation negatively affects human health, leading to increases in cancer, neurological and immunological disorders, and other diseases and symptoms. Plaintiffs state that RF radiation is also detrimental to the environment, causing changes in animal behavior, decreases in reproduction and increases in mortality, and negative impacts to the health of both animals and plants. Plaintiffs maintain that doctors and scientists worldwide have called for regulation, limitation, or banning of RF radiation due to these consequences. However, Plaintiffs allege that Defendant has instead reduced protections against RF radiation, despite knowing of these dangers, by amending its telecommunications facility approval process.

Chapter 27 of the Santa Fe City Code regulates telecommunications facilities that are located in public rights-of-way. As enacted in 1998, Chapter 27 required a site-specific lease for every facility placed in a public right-of-way and charged a fee for the lease. However, revisions adopted in 2010 eliminated site-specific leases and fees in favor of a franchise system. This allowed a telecommunications company to submit an application for a franchise, with a map of proposed routes and antenna locations, rather than for a single location. The routes could be approved after a public hearing, and the company would not need to provide notice or seek further approval for the specific antenna locations along an approved route, but it would be required to pay a franchise fee.

Qwest Corporation challenged the fee structure, which charged 3 percent of the annual gross revenue that the provider derived from facilities located in public rights-of-way, and the

---

[4] Facts are drawn from allegations in the Complaint or from documents undisputed by the parties, of which the Court may take judicial notice. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008).

United States District Court for the District of New Mexico struck it down. *See Qwest Corp. v. City of Santa Fe*, 2013 WL 12241199 (D.N.M. 2013). The City then appealed to the Tenth Circuit, and on July 1, 2015, Qwest and the City signed a settlement agreement and stipulated to the dismissal of the appeal. The settlement agreement reduced the franchise fee to 2 percent of only the revenue that Qwest derived from its retail services.

On November 9, 2016, after a public hearing, the City adopted Ordinance 2016-42 to amend Chapter 27 in accordance with the *Qwest Corp.* settlement that had been approved by the Tenth Circuit Court of Appeals. The new ordinance imposed a franchise fee of 2 percent of gross revenue from telecommunications retail services only. On December 8, 2016, Plaintiffs Mr. Firstenberg and the Alliance filed suit in the State of New Mexico First Judicial District Court seeking a declaration that Ordinance 2016-42 was void and unenforceable.[5] *See Santa Fe Alliance v. City of Santa Fe*, Case No. D-101-CV-2016-02801. However, because no franchises had yet been awarded, the state court dismissed the complaint on June 6, 2017 as not ripe for review. On July 25, 2017, it denied Plaintiffs' motion to reconsider that dismissal.

Meanwhile, on March 20, 2017, telecommunications company CNSP, Inc. d/b/a NMSURF also challenged Chapter 27, arguing that certain provisions were invalid, unconstitutional, and preempted by the Telecommunications Act, 47 U.S.C. § 253. *See CNSP v. City of Santa Fe*, No. 17-cv-00355-KG-SCY (D.N.M.). This suit was recently dismissed by United States District Judge Kenneth Gonzales. *See id.*, Final Order of Dismissal (Doc. No. 55, entered March 14, 2018). But on August 30, 2017 while the suit was still pending, the City adopted Ordinance 2017-18 in response to the litigation. Ordinance 2017-18 repealed many of

---

[5] The Court will take judicial notice of the fact that Plaintiffs have filed numerous lawsuits similar to this one, in both state and federal court, all of which have been dismissed. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

the franchise application requirements in order to streamline the land use review process for telecommunications facilities in the public rights of way. The City has not yet awarded any franchises under Chapter 27 as amended by either of the challenged ordinances, but it has scheduled five public hearings to be held May 9, 2018, regarding proposed telecommunications franchises.

On November 21, 2017, Santa Fe Mayor Javier Gonzales issued a Proclamation of Emergency due to "insufficient telecommunications capacity in the City, which have caused or are causing danger, or injury or damage to persons and property within the City." Doc. 20-1. Mayor Gonzales authorized the installation of temporary or mobile wireless telecommunications facilities on City property, pending review and approval of fixed wireless facilities, to allow emergency responders to better communicate with their departments, other agencies, and the public. On December 8, 2017, seven facilities were approved and construction began shortly thereafter. Mayor Gonzales issued two substantially identical Proclamations on December 13, 2017, and December 26, 2017.

Plaintiffs allege that in adopting Ordinance 2016-42 and Ordinance 2017-18 and issuing the Proclamations of Emergency, the City violated Plaintiffs' rights under the United States Constitution, the New Mexico Constitution, and numerous state statutes and city ordinances. Plaintiffs request declaratory relief and ask the Court to temporarily and permanently enjoin Defendant (1) from enforcing Chapter 27 as amended by Ordinance 2016-42 and Ordinance 2017-18; (2) from awarding any franchises under Chapter 27 pending the outcome of this lawsuit; (3) from enforcing the Mayor of Santa Fe's Proclamations of Emergency, including any construction of telecommunications facilities authorized by the Proclamations.

## II. LEGAL STANDARD

Plaintiffs' Complaint recites twenty claims, raising issues under both federal and state law. The Court construes Plaintiffs' claims 1–3 and 9 to be based on federal law, while claims 17–20 are not causes of action, but plead "additional issues," some of which involve federal law, in anticipation that Defendant will raise preemption by federal or state law as a defense. Claims 4–8 and 10–14 allege violations of only state law, and claims 15–16 appear to be requests for relief and do not state a cause of action. The Court has original jurisdiction over claims brought under federal law, *see* 28 U.S.C. § 1331, and it may exercise supplemental jurisdiction over related state law claims, *see* 28 U.S.C. § 1367. Defendant argues primarily that Plaintiffs' Complaint should be dismissed in its entirety under Rule 12(b)(6) for failure to state a claim and Rule 12(b)(7) for failure to join an indispensable party. However, Defendant also contends that dismissal under Rule 12(b)(1) is appropriate because Plaintiffs lack standing and Plaintiffs' claims are not ripe for review.

In evaluating a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the Court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [Plaintiffs]." *Garling v. United States Environmental Protection Agency*, 849 F.3d 1289, 1292 (10th Cir. 2017). But the Court will not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor is it "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "draw on its judicial experience and common sense" to determine whether the

facts as alleged "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Additionally, the Court may exercise its discretion to dismiss a case under Rule 12(b)(7) for failure to join a necessary and indispensable party. *See Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1277 (10th Cir. 2012).

### III. DISCUSSION

"Both standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute." *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013).

> Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending.

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013). The ripeness inquiry is closely related. *See Southern Utah Wilderness Alliance*, 707 F.3d at 1157–58. "In evaluating ripeness the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 1158 (internal quotation marks omitted). "The doctrine of ripeness prevents courts 'from entangling themselves in abstract disagreements over administrative policies,'" while also "'protect[ing] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

The Court will first address Plaintiffs' standing to bring their federal claims. Plaintiffs allege two types of injury in connection with the Ordinances and Proclamations challenged in

claims 1–3 and 9: (1) increased risk of physical harm to citizens, including Plaintiffs, and to the environment due to the proliferation of radio frequency radiation; and (2) procedural injury through the repeal of notice and hearing requirements that previously applied to the approval of telecommunications facilities located in the public rights-of-way.

Plaintiffs' allegations of physical harm are largely based on generalized statements of increased incidents of, and risk for, negative health impacts based on the worldwide proliferation of RF radiation. Plaintiffs allege that their homes were rendered uninhabitable to them as a result of nearby cell towers, but this is not traceable to the challenged Ordinances because Plaintiffs admit that no telecommunications facilities have yet been approved or constructed under those provisions. Plaintiffs do state that some mobile or temporary facilities have been constructed in accordance with the Proclamations, but they do not identify the location of these facilities nor do they allege any particularized injury that has resulted from them. The home Mr. Firstenberg describes as uninhabitable was located in Brooklyn, New York, and was abandoned by Mr. Firstenberg in 1996, long before the Ordinances were adopted. Compl. ¶ 38. The cell tower Ms. Steinhoff complains of was erected in 2013. *Id.* ¶ 39. While various members of the Alliance also allege that they are "refugees from homes they had to leave when a cell tower was erected," *id.* ¶ 40, they do not describe when or where this occurred, and they have not established that this is traceable to the Proclamations or amended Ordinances, or that it is redressable by a favorable ruling.

Plaintiffs also allege future harm because as a result of Defendant's actions they "will no longer be safe in their homes, at work, or while traveling on the public streets." *Id.* ¶ 73. They argue that "the placement of wireless telecommunications facilities on the sidewalk directly in front of Plaintiffs' homes and businesses will render their homes and businesses uninhabitable

7

and unusable." *Id.* ¶ 81. And they contend that this injury is imminent because Defendant has set five public hearings to be held May 9, 2018, regarding proposed telecommunications franchises, which Plaintiffs contend are likely to be approved. But even if the Court assumes that franchise approval is likely, Plaintiffs have no information as to whether any new facilities would be placed near Plaintiffs' homes or businesses or in any locations that will result in concrete, actual, and particularized injury to Plaintiffs. Finally, the increased risk of physical harm alleged by Plaintiffs is neither traceable to the challenged actions nor redresseable by a favorable ruling. The Ordinances and Proclamations challenged by Plaintiffs did not newly authorize the existence of any allegedly harmful telecommunications facilities, they only amended the procedure Defendant requires for the application and approval of such facilities. A ruling in Plaintiffs' favor would not redress any injuries caused by the proliferation of RF radiation of which Plaintiffs complain because it would not prevent the construction of any additional telecommunications facilities; it would only require Defendant to alter its approval procedures.

Plaintiffs assert that the procedural changes alone are a cognizable injury because they deprive Plaintiffs of their right to notice and a hearing before a decision is made regarding approval and location of telecommunications facilities. "But deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*— is insufficient to create Article III standing." *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). Plaintiffs have not alleged any concrete interest that is affected by Defendant's changed procedure because the locations of any proposed telecommunications facilities, and whether they would have any particularized effect on Plaintiffs, are unknown. *See id.* (interest in commenting on agency actions insufficient without demonstration that the actions would impact the plaintiffs' concrete plans to visit a particular location). Additionally, notice and hearing will

8

still be given prior to at least some facility decisions, as demonstrated by Plaintiffs' knowledge of the City's plan to hold five public hearings on May 9, 2018. "[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). The Court concludes that Plaintiffs do not have standing to bring the federal claims 1–3 or 9, and consequently, that the Court lacks jurisdiction to consider them.

Plaintiffs' claims 17–20 purport to also raise federal law, but are brought merely to request declaratory relief in anticipation that Defendant will assert a preemption defense. This is insufficient to confer federal jurisdiction. *See Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1025 (10th Cir. 2012). Even if the Court were to construe Plaintiffs' mention of the First and Fifth Amendments in claims 18–20 as alleging a federal cause of action, Plaintiffs would not have standing to bring these claims. Plaintiffs challenge the constitutionality of Section 704 of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(iv)-(v), based on allegations that it is a burden on the content of speech and a potential violation of substantive due process if it is held to bar their claims. However, Section 704 applies to regulatory agencies and the regulated facilities, and governs what and how regulation may be applied to mobile services and wireless facilities. *See* § 332(c)(7)(B)(iv)-(v). It does not apply to Plaintiffs. The Wireless Consumer Advanced Infrastructure Investment Act (WCAII), H.B. 38, 53rd Leg., 2d Sess. (NM 2018), regulates the interactions of wireless providers and municipal authorities, and is also inapplicable to Plaintiffs. Apart from the potential application of preemption to bar their other claims, Plaintiffs do not allege any injury from these provisions other than the previously discussed

procedural deprivations and generalized risks of physical harm. The Court concludes that Plaintiffs do not have standing to challenge the constitutionality of the Telecommunications Act or the WCAII, and the Court therefore lacks jurisdiction to consider claims 17–20 even if they are liberally construed to raise a federal cause of action.

Having concluded that it lacks jurisdiction over Plaintiffs' federal claims, the Court may no longer exercise supplemental jurisdiction over Plaintiffs' state law claims 4–12. "'Since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal for lack of subject matter jurisdiction precludes a district court from exercising supplemental jurisdiction over related state claims.'" *Ferguson v. Oklahoma Secretary of State*, 6 F. App'x 797, 799 (10th Cir. 2001) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) (brackets omitted)).

IT IS THEREFORE ORDERED that:

(1) DEFENDANT CITY OF SANTA FE'S AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. No. 22) is GRANTED;

(2) Plaintiffs' FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE AND OTHER RELIEF (Doc. No. 18) is DISMISSED without prejudice for lack of jurisdiction; and

(3) Plaintiffs' MOTION TO FILE SURREPLY (Doc. No. 39) is DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE